**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Femi T. AMURE, Jr., Defendant–
Appellant.**

No. 02–5406.

United States Court of Appeals,
Sixth Circuit.

Nov. 24, 2003.

Tracy L. Berry, Asst. U.S. Attorney, Memphis, TN, for Plaintiff–ppellee.

Femi T. Amure, Jr., pro se, Manchester, KY, Robert C. Irby, Memphis, TN, for Defendant–Appellant.

Before CLAY and COOK, Circuit Judges; and STAFFORD, District Judge.*

PER CURIAM.

Appellant, Femi T. Amure, Jr. ("Amure"), appeals his jury conviction for identity theft and conspiracy to commit identity theft. Amure contends that there was insufficient evidence to sustain the conviction. We affirm.

## I. BACKGROUND

Amure was one of many persons charged in a multi-count indictment with (1) conspiracy to violate Title 18, United States Code, Section 1028(a)(7), which prohibits the knowing transfer and use, without lawful authority, of a means of identification of another person, in order to commit another violation of federal law; and (2) various section 1028(a)(7) substantive offenses. Specifically, Amure was charged (1) in Count 1, with conspiracy to commit identity theft in order to fraudulently purchase vehicles with values in excess of $500; (2) in Count 15, with using another person's identifying information in connection with the September 29, 2000, sale/purchase of a 1998 Lexus LS400 automobile; (3) in Count 20, with using another person's identifying information in connection with the October 6, 2000, sale/purchase of a 2001 Lexus GS430 automobile; (4) in Count 21, with using another person's identifying information in connection with the October 9, 2000, sale/purchase of a 2001 Chevrolet Tahoe vehicle; and (5) in Count 22, with using another person's identifying information in connection with the October 13, 2000, sale/purchase of a 1998 Chevrolet Corvette automobile. The jury found Amure guilty as to Counts 1, 20, 21, and 22, but not guilty as to Count 15. Amure was sentenced to 36 months incarceration, to be followed by supervised release for a term of 2 years. He was also sentenced to pay restitution in the amount of $73,817.30.

## II. STANDARD OF REVIEW

This court reviews a defendant's sufficiency of the evidence claim by considering "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard places a "very heavy burden" upon a defendant making a sufficiency of the evidence challenge. *United States v. Tocco,* 200 F.3d 401, 424 (6th Cir.2000). The government

* The Hon. William Stafford, Senior United States District Judge for the Northern District of Florida, sitting by designation.

may meet its burden through circumstantial evidence alone, and such evidence need not exclude every possible hypothesis except that of guilt. *United States v. Peters,* 15 F.3d 540, 544 (6th Cir.1994). In assessing the sufficiency of the evidence, the court does not weigh the evidence or assess the credibility of the witnesses. *United States v. Jackson,* 55 F.3d 1219, 1225 (6th Cir.1995). Indeed, in the context of a sufficiency of the evidence claim, "it is well-settled that on appeal, there 'is no place ... for arguments regarding a government witness's lack of credibility.'" *United States v. Talley,* 164 F.3d 989, 996 (6th Cir.1999) (quoting *United States v. Adamo,* 742 F.2d 927, 934–935 (6th Cir. 1984)).

## III. DISCUSSION

Amure's sole argument on appeal centers on the purported lack of credibility of Anthony Davis ("Davis"). As a cooperating co-defendant, Davis testified at trial, describing how he obtained the credit histories and social security numbers of various individuals using credit software, then used-or had others use-the information to buy vehicles at several dealerships in Tennessee and Mississippi.

Davis explained that he first became involved with Amure on or about September 29, 2000. At that time, Davis wanted to help a friend, Kevin Walsh ("Walsh"), buy a Lexus automobile. Davis told Walsh to find a black salesman at the Lexus dealership either in Jackson, Mississippi, or Nashville, Tennessee. Walsh contacted the Herrin–Gear Lexus dealership in Jackson and asked that a credit application be faxed to Davis's office. When Davis received the fax from the Jackson dealership, he called the salesman who had sent the fax. That salesman was Amure. According to Davis, Amure was told about, and agreed to go along with, Davis's scheme. Davis and Walsh thereafter traveled to Herrin–Gear where they purchased a 1998 Lexus LS400 using the identifying information of a person who, unlike Walsh, had a good credit history.

Davis next explained that, on or about October 6, 2000, he helped Winfred Boyd ("Boyd") buy a 2001 Lexus GS430 from Amure. The car was intended for someone to whom Boyd owed money. Davis negotiated the sale with Amure over the phone and via fax. Amure delivered the car to Boyd, who signed the paperwork at the delivery site. According to Davis, Amure was paid $1,000.00 for his part in the Boyd sale.

Davis also testified that, on or about October 9, 2000, Amure processed the sale of a 2001 Chevrolet Tahoe for a "Sean Kearney." "Sean Kearney" was, in fact, Sylvester Kearney ("Kearney"), a co-defendant in this case. Because Kearney did not have insurance, Davis made up an insurance certificate for Kearney that he faxed to Amure. Kearney otherwise handled the transaction for the Tahoe. Kearney (who pleaded guilty in the case) testified that he paid Amure $1,000.00 when Amure delivered the car to him.

Davis finally testified that, on or about October 13, 2000, he purchased from Amure a 1998 Chevrolet Corvette for a friend of his, Deadrick Clayborn ("Clayborn"). Davis negotiated the deal in the name of John C. Davis, using a social security number that he obtained using his credit software. The car was delivered by Amure to Davis and Clayborn at an exit ramp on the expressway outside of Jackson. Clayborn signed his name as "John C. Davis" on all of the paperwork at the delivery site. Clayborn testified that Amure brought with him a copy of a driver's license in the name of John C. Davis. The driver's license, which did not have Clayborn's picture on it, reflected that

John C. Davis was 5′10″ tall and weighed 165 pounds. Clayborn was 6′2″ tall and weighed 230 to 240 pounds.

After hearing the testimony of Davis and others, the jury acquitted Amure of Count 15, involving the sale of the LS400 to Walsh, but convicted Amure of Counts One (conspiracy), 20 (the sale to Boyd), 21 (the sale to Kearney), and 22 (the sale to Clayborn). Amure contends that, if the jurors had been rational, they would have disbelieved Davis and acquitted him on all counts. The jurors, however, observed Davis on the witness stand; they heard defense counsel's attacks on Davis's credibility during cross-examination and closing arguments; they were instructed as to their role in assessing witness credibility; and they chose to believe at least part of what Davis said. It is not our role to question the jury's assessment of Davis's credibility. *United States v. Bailey*, 444 U.S. 394, 414–415, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (explaining that "[i]t is for [jurors], generally, and not for appellate courts, to say that a particular witness spoke the truth or fabricated a cock-and-bull story").

By challenging Davis's credibility, Amure attacks the quality of the government's evidence and not its sufficiency. Evidence may be held insufficient only if the government's case lacks evidence in support of one or more elements of the crimes charged. Because Amure does not argue, nor do we find, that the government's case was insufficient assuming the jury believed some or all of Davis's testimony, the jury's verdict must stand. We AFFIRM.